Ariel A. Neuman - State Bar No. 241594
  aneuman@birdmarella.com
Fanxi Wang - State Bar No. 287584
  fwang@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Plaintiffs Edward Park
and Richard Buyalos

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| EDWARD PARK, an individual; RICHARD BUYALOS, an individual, <br><br>Plaintiffs, <br><br>vs. <br><br>JASON WONG, an individual, <br><br>Defendant. | CASE NO. <br><br>**COMPLAINT FOR:** <br><br>**1) VIOLATION OF SECURITIES EXCHANGE ACT OF 1934 SECTION 15(b)** <br><br>**2) BREACH OF FIDUCIARY DUTY** <br><br>**3) VIOLATION OF CAL. CORP. CODE § 25501.5** <br><br>**4) VIOLATION OF CAL. BUS. & PROF. CODE § 17200** <br><br>**5) UNJUST ENRICHMENT** <br><br>**JURY TRIAL DEMANDED** |

3910307.5

COMPLAINT

Plaintiffs Edward Park and Richard Buyalos (collectively, "Plaintiffs") bring this action against Defendant Jason Wong, and allege as follows:

## NATURE OF THE ACTION

1. This dispute arises from Defendant's sale of cryptocurrency tokens known as ERC-20 DAG Tokens to Plaintiffs while operating as an unregistered broker, in blatant violation of federal and state securities laws, and his subsequent failure to inform Plaintiffs of the "token swap" that occurred in April 2020. As a result of Defendant's actions, Plaintiffs were denied the ability to exchange their ERC-20 DAG Tokens, which rendered their unswapped ERC-20 DAG Tokens worthless and caused them more than one million dollars in investment losses.

2. A DAG token is a cryptocurrency created by Constellation Labs, LLC ("Constellation"). In January 2018, Defendant Jason Wong entered into a Simple Agreement for Future Tokens ("SAFT") with Constellation, and purchased an allotment of ERC-20 DAG Tokens using 1100 Ethereum ("ETH").[1] Defendant then resold the allotment to more than a dozen individuals, including Plaintiffs, via a purported "crypto syndicate" known as "Orca Pod." Defendant Wong had held himself out as an expert and advisor on cryptocurrency investments to the individuals interested in Orca Pod, and frequently dispensed advice on various cryptocurrency investment opportunities in online chatrooms associated with Orca Pod. Defendant Wong was the only person at Orca Pod who had direct contact with Constellation, served as the sole conduit for all information about Constellation, and represented that he would keep the group informed about material events concerning Constellation.

3. Based on Defendant Wong's advice about Constellation and his representations that he would keep the group apprised of material events relating to Constellation, Plaintiffs Park and Buyalos each purchased 86 ETH worth of ERC-20

---

[1] Ethereum is a cryptocurrency.

1  DAG tokens.  At the time Plaintiffs purchased their ERC-20 DAG Tokens, each ETH was worth approximately $1400.  This purchased approximately 3.6 million ERC-20 DAG tokens for Plaintiffs.

4.  Defendant took 5% of the tokens as a broker's or advisor's fee.  However, on information and belief, Defendant was not at the time registered as a securities broker or investment advisor, as required by the applicable federal and state securities laws.

5.  On or about April 29, 2020, Constellation conducted a token swap, the purpose of which was to allow investors to swap their ERC-20 DAG Tokens for Constellation's native cryptocurrency token (the "Mainnet DAG Tokens").  On information and belief, Constellation informed all direct purchasers of ERC-20 DAG Tokens with whom it had agreements of the swap, and specifically informed Defendant of the swap by email.  However, Defendant did not notify Plaintiffs of the token swap, and thus Plaintiffs did not know about the opportunity to exchange their ERC-20 DAG tokens for Mainnet DAG Tokens.

6.  Plaintiffs did not discover that the token swap had occurred until approximately the fall of 2021, when Plaintiff Park came across a reference to it online.  At its peak in or around August 2021, the Mainnet DAG Token, which Plaintiffs were denied the opportunity to obtain, was worth approximately $0.46 each, meaning that had Plaintiffs been notified of the token swap, their 3.6 million DAG tokens would have been worth more than $1.6 million at the time.  Instead, as discussed below, Plaintiffs have not had control over their ERC-20 DAG Tokens since April 2020.  Now, Plaintiffs' 3.6 million unswapped ERC-20 DAG Tokens are essentially worthless because they can no longer be swapped or traded.

7.  Plaintiffs bring this action against Defendant, seeking damages in the amount of their investment losses.

**THE PARTIES**

8.  Plaintiff Edward Park is a resident of California.

9. Plaintiff Richard Buyalos is a resident of California.

10. On information and belief, Defendant Jason Wong is a resident of San Francisco, California. Wong has been involved in the cryptocurrency community for many years, and holds himself out as an experienced broker and advisor on the cryptocurrency market and blockchains.

## JURISDICTION AND VENUE

11. This Court has personal jurisdiction over Defendant because Defendant is a resident of California, and regularly conducts business within California, including advising on and selling cryptocurrency tokens to residents of California.

12. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because Defendant's conduct in selling securities without registering as a broker violated Section 15(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78o(a)(1)), and Plaintiffs are entitled to remedies pursuant to Section 29(b) of the same statute (15 U.S.C. § 78cc(b)).

13. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' remaining causes of action, as the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts under Article III of the United States Constitution.

14. Venue is proper in this Court because a substantial part of the events giving rise to the claims herein occurred in this district. Specifically, Defendant sold the cryptocurrency tokens at issue to residents of this district, and his conduct caused Plaintiffs injury in this district.

## GENERAL ALLEGATIONS

15. Defendant Jason Wong has been involved in the cryptocurrency community for many years, including serving as advisors to several blockchain companies, and had become involved an online group named Orca Pod for the purpose of facilitating cryptocurrency investments for interested individuals.

Defendant consistently held himself out as an expert and advisor on cryptocurrency investments and blockchains, and frequently dispensed investment advice in online chatrooms and message groups associated with Orca Pod.  Plaintiffs were introduced to Wong through Plaintiff Edward Park's brother, David Park.  Because of Defendant's representations about his successful experience in past cryptocurrency deals and his access to contacts in the cryptocurrency world, members of Orca Pod respected Defendant and trusted his advice in making investment decisions.

16. In or around January 2018, Wong entered into the Simple Agreement for Future Tokens ("SAFT") with Constellation, pursuant to which Wong paid 1100 Ethereum ("ETH") to purchase the right to units of Constellation's cryptocurrency, known as ERC-20 DAG Tokens.

17. The SAFT contained the following provision:

> The Purchaser has been advised that ***this instrument is a security*** and that the offers and sales of this instrument have not been registered under any country's securities laws and, therefore, ***cannot be resold except in compliance with the applicable country's laws***.  The Purchaser is purchasing this instrument for its own account for investment, not as a nominee or agent, and ***not with a view to, or for resale in connection with, the distribution thereof***, and the Purchaser has no present intention of selling, granting any participation in, or otherwise distributing the same.

18. Wong was therefore clearly aware that (1) the ERC-20 DAG Token was a security within the definition of the applicable federal and state securities laws; (2) he had represented to Constellation that he would not resell the tokens; and (3) as an unlicensed broker, he could not resell the tokens without violating securities laws.  Despite this prohibition in the SAFT, Wong immediately resold his allotment of 1100 Ethereum worth of ERC-20 DAG Tokens to more than a dozen individuals in Orca Pod, including Plaintiffs.

19. As Wong likely knows, the SEC takes an extremely dim view of unscrupulous individuals who violate securities laws by dispensing investment advice and/or selling securities without a license.  Penalties can include

disgorgement of profits, civil fines, and disciplinary actions such as barring the offending individual from the securities industry. On information and belief, Wong continues to operate as an unregistered advisor and/or broker in cryptocurrency investments.

20. Wong was the only person involved in Orca Pod who had a relationship and direct contact with the Constellation team. As a result, he was the sole conduit of information about Constellation. Members of Orca Pod—including Plaintiffs—relied on the information and advice Wong provided about Constellation, and trusted that he would keep them apprised of material communications from Constellation that could affect the value of the ERC-20 DAG Tokens.

21. Plaintiffs Park and Buyalos were each allocated 86 ETH worth of ERC-20 DAG Tokens. At the time Plaintiffs purchased their ERC-20 DAG Tokens, each ETH was worth approximately $1400. This purchased approximately 3.6 million ERC-20 DAG tokens for Plaintiffs.

22. According to the spreadsheet circulated to Orca Pod, Wong kept 5% of Plaintiffs' tokens as a broker's or advisor's fee. On information and belief, Wong was not registered as a securities broker or advisor at the time he sold his ERC-20 DAG Tokens to Plaintiffs.

23. In 2018, initial coin offerings ("ICOs") were often conducted on the Ethereum blockchain using ERC-20 tokens. This was a way for a cryptocurrency company to raise funds from investors—funds it would use to get its own blockchain up and running. In this context, ERC-20 tokens issued during early fundraising or ICOs were essentially "placeholders," to be replaced by tokens on the company's native blockchain later. Once a company's own blockchain went live, it would conduct a "token swap," in which investors could exchange their ERC-20 tokens for tokens on the company's own blockchain. Token swaps were generally well-publicized and had clear deadlines. If investors failed to swap their "placeholder" ERC-20 tokens for the company's new tokens by the set deadline,

those ERC-20 tokens usually became worthless, because they could no longer be traded.  Thus, information about a company's decision to conduct a token swap was not only material but critical, because any investors who missed their chance to swap their tokens would end up with worthless tokens.

24. Constellation conducted an ICO in this manner.  On or about June 15, 2018, after selling early allotments of ERC-20 DAG Tokens to investors including Wong, Constellation conducted an ICO of ERC-20 DAG Tokens on the Ethereum blockchain.  At the time, on information and belief, Constellation sold 720 million ERC-20 DAG Tokens for a total of $33.7 million, which represented approximately 18% of the DAG Tokens available.  When Constellation conducted its token swap for exchanging the ERC-20 DAG Tokens to new tokens on its own native blockchain (the "Mainnet Tokens"), on or about April 29, 2020, Constellation did not widely publicize the token swap or the deadline.  Instead, it only posted a three-sentence update on its website that contained no detailed information.

25. On information and belief, Constellation notified Defendant Wong of the token swap pursuant to the SAFT, which listed Wong's email address and provided that "any notice required or permitted" by the SAFT would be sent to that email address.  Nevertheless, although Wong had kept Plaintiffs apprised of other news concerning Constellation, Wong concealed and/or failed to notify Plaintiffs that the token swap was taking place.

26. As a result, Plaintiffs were not aware that the token swap was taking place, and missed the deadline for exchanging their ERC-20 DAG Tokens for the Mainnet DAG Tokens.

27. At its peak in or around August 2021, the Mainnet DAG Token was worth approximately $0.46, which means that had Plaintiffs been notified of the token swap, their 3.6 million DAG tokens would have been worth more than $1.6 million at the time.  Instead, Plaintiffs' 3.6 million unswapped ERC-20 DAG Tokens are now essentially worthless because they can no longer be swapped or

traded.

28. Plaintiffs did not discover that the token swap had occurred until Plaintiff Park happened upon a reference to it online in or around the fall of 2021. Upon this discovery, Plaintiffs entered into a series of tolling agreements with Defendant in an effort to resolve this matter informally, which tolled applicable statutes of limitations for approximately nine months (from March 1, 2023 to November 30, 2023). The parties were unable to resolve this dispute and Plaintiffs now bring this action against Defendant.

## FIRST CAUSE OF ACTION

### (Violation of Securities Exchange Act of 1934 Section 15(b))

29. Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs, as though fully set forth herein.

30. Section 15(b) of the Securities Exchange Act ("the Act") provides:

> It shall be unlawful for any broker or dealer . . . to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . ***unless such broker or dealer is registered*** in accordance with subsection (b) of this section.

15 U.S.C. § 78o(a)(1) (emphasis added).

31. Section 29(b) of the Act further provides:

> ***Every contract made in violation*** of any provision of this chapter or of any rule or regulation thereunder . . . ***shall be void*** as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract[.]

15 U.S.C. § 78cc(b) (emphases added).

32. Pursuant to the SAFT as well as guidance from the SEC, the ERC-20 DAG Tokens are securities regulated by the Act.

33. Defendant Wong violated the Act by using means of interstate commerce to effect and induce the sale of ERC-20 DAG Tokens to Plaintiffs without being registered as a broker in accordance with the Act.

34. Plaintiffs have been damaged by Defendant Wong's conduct in an

amount to be proven at trial.

35. Plaintiffs have a private right of action under 15 U.S.C. § 78o(a)(1) and/or § 78cc(b).

## SECOND CAUSE OF ACTION

### (Breach of Fiduciary Duty)

36. Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs, as though fully set forth herein.

37. As Plaintiffs' cryptocurrency broker and advisor, Defendant owed Plaintiffs fiduciary duties, including the duty of care and the duty to keep Plaintiffs informed of material events affecting their investments.

38. By failing to timely inform Plaintiffs that the Constellation token swap was taking place in April 2020, Defendant breached the fiduciary duties owed to Plaintiffs.

39. As a result of Defendant's breach, Plaintiffs have suffered significant harm, as their 3.6 million unswapped ERC-20 DAG Tokens are now worthless.

40. Defendant's breach of his fiduciary duties was a substantial factor in causing Plaintiffs' harm, as Plaintiff would have timely exchanged their ERC-20 DAG Tokens for the Mainnet Tokens, had Defendant informed them of the token swap.

41. Plaintiffs have been damaged by Defendant Wong's conduct in an amount to be proven at trial.

42. Defendant's conduct was undertaken with malice, oppression and/or fraud, warranting the imposition of punitive damages. As discussed above, Defendant knew—including from the terms of the SAFT—that the ERC-20 DAG Token was a security and that he was prohibited both by the terms of the SAFT and by the applicable federal and state securities laws from reselling those tokens without a license. Nevertheless, he engaged in the unlawful and unscrupulous conduct of persuading Plaintiffs to buy those tokens, and then violating his fiduciary

duties to Plaintiffs by failing to disclose that Constellation was conducting a token swap. Accordingly, Plaintiffs seek punitive damages in an amount to be proven at trial, in order to deter Defendant from further unlawful conduct.

## THIRD CAUSE OF ACTION

### (Violation of Cal. Corp. Code § 25501.5)

43. Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs, as though fully set forth herein.

44. California Corporate Securities Law, at Cal. Corp. Code Section 25501.5(a)(1), provides in relevant part:

> A person who purchases a security from or sells a security to a broker-dealer that is required to be licensed and has not, at the time of the sale or purchase, applied for and secured from the commissioner a certificate . . . that is in effect at the time of the sale or purchase authorizing that broker-dealer to act in that capacity, may bring an action for rescission of the sale or purchase or, if the plaintiff or the defendant no longer owns the security, for damages.

45. California Code of Civil Procedure Section 1029.8 further provides that:

> Any unlicensed person who causes injury or damage to another person as a result of providing goods or performing services for which a license is required . . . shall be liable to the injured person for ***treble the amount of damages*** assessed in a civil action in any court having proper jurisdiction.

(Emphasis added).

46. Defendant violated Cal. Corp. Code § 25501.5 by selling the ERC-20 DAG Tokens to Plaintiffs without a license.

47. Plaintiffs have been damaged by Defendant Wong's conduct in an amount to be proven at trial, including treble damages pursuant to Cal. Civ. Proc. Code § 1029.8.

## FOURTH CAUSE OF ACTION

### (Unfair Business Practices in Violation of Cal. Bus. & Prof. Code § 17200)

48. Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs, as though fully set forth herein.

49. California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, prohibits "any unlawful, unfair, or fraudulent business act or practice."

50. By selling Plaintiffs ERC-20 DAG Tokens as an unlicensed broker, and by subsequently failing to inform Plaintiffs of the Constellation token swap, Defendant engaged in business practices that were both "unlawful" and "unfair" within the meaning of the UCL.

51. As a direct and proximate result of Defendant's unlawful and unfair business practices, Plaintiffs have suffered significant economic harm.

52. Plaintiffs seek restitution from Defendant in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

### (Unjust Enrichment)

53. Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs, as though fully set forth herein.

54. By unlawfully selling ERC-20 DAG Tokens to Plaintiffs, and receiving and retaining payment from Plaintiffs in the form of 182 Ethereum coins, Defendant has been unjustly enriched.

55. Plaintiffs seek restitution from Defendant in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1. Compensatory damages;
2. Treble damages pursuant to Cal. Civ. Proc. Code § 1029.8;
3. Punitive damages;
4. Restitution;
5. Interest at the legal rate per annum;
6. Attorneys' fees and costs

7. Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on their claims.

DATED: January 26, 2024

Ariel A. Neuman
Fanxi Wang
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.


By:    */s/ Ariel A. Neuman*
       Ariel A. Neuman
Attorneys for Plaintiffs Edward Park
and Richard Buyalos